UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HOLMAN'S DNA TRUCKING AND | § | |
| CONSTRUCTION, LLC, and | § | |
| GREGORY D. HOLMAN d/b/a DNA | § | |
| AUTO TRUCKING, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-2653-B |
| | § | |
| NATIONAL LIABILITY & FIRE | § | |
| INSURANCE COMPANY and FOOD | § | |
| LION, LLC, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Food Lion, LLC's Motion to Dismiss for Lack of Personal

Jurisdiction (Doc. 41). For the reasons stated below, the Court **GRANTS** the motion.

I.

BACKGROUND

A.    *Factual Background*[1]

This is a dispute about who should bear the cost of a rejected produce shipment. Doc. 27,

Pls.' Second Am. Compl. ¶¶ 16–21. Plaintiffs Holman's DNA Trucking and Construction, LLC

("Holman's DNA") and Gregory D. Holman ("Holman") are in the trucking business. *Id.* ¶ 11. Food

Lion is a North Carolina company that operates grocery stores in 10 states. Doc. 41-1, Def.'s Br. Mot.

---

[1] The Court derives the factual background from Plaintiffs' Second Amended Complaint (Doc. 27).

Dismiss 5; Doc. 51, Def.'s Reply Mot. Dismiss 3 n.3. Plaintiffs assert that Food Lion operates "over 14 stores" in Texas. Doc. 50, Pls.' Resp. Mot. Dismiss 3. Food Lion contends that it has no stores in Texas. Doc. 51, Def.'s Reply 3 n.3.

On August 23, 2018, Holman, who is based in Texas, entered an agreement with C.H. Robinson, a Minnesota "brokerage compan[y]," whereby Holman would "deliver[] . . . produce" to Food Lion's location in South Carolina.[2] *Id.* ¶¶ 15–16. The produce was to be kept at 36 degrees Fahrenheit while in transit.  *See id.* ¶ 18. Pursuant to the agreement, Holman attempted to deliver a truckload of produce to Food Lion's Elloree, South Carolina location on August 28, 2018. *Id.* ¶ 16. When Holman arrived, the receivers at Food Lion's store told him the temperature recorder measured temperatures between 30.1 and 37.3 degrees Fahrenheit during transportation and refused the cargo. *Id.* ¶¶ 18–19.

After the failed delivery, Holman had his trailer's temperature tested at a nearby warehouse, and the test reported that the trailer's temperature was 36 degrees Fahrenheit. *Id.* ¶ 20. Holman was instructed to dispose of the rejected shipment and paid C.H. Robinson $13,042.96 for the refused cargo. *Id.* ¶¶ 2, 21. In February 2020, Holman's insurer, National Liability & Fire Insurance Company, advised Holman that the loss was excluded under his insurance policy. *Id.* ¶ 24.

On May 20, 2022, Plaintiffs brought this action for negligent misrepresentation, breach of contract, and unjust enrichment against National Liability & Fire Insurance Company, C.H. Robinson, Walmart, and Food Lion. *Id.* ¶¶ 1–2. Regarding Food Lion, Plaintiffs' Complaint states only that "Food Lion, LLC improperly denied the loads indicating the temperatures were not kept

---

[2] Plaintiffs claim for the first time in their Response that Holman contracted directly with Food Lion to deliver the produce. Doc. 50, Pls.' Resp. 2.

at 36 degrees when in fact some of the cargo was at the correct temperature." *Id.* ¶ 32. Defendant Food Lion filed this Motion to Dismiss for Lack of Personal Jurisdiction. Doc. 41, Def.'s Br. The Motion is ripe for determination, and the Court now considers it below.

## II.

## LEGAL STANDARD

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "[t]he plaintiff has the burden to make a *prima facie* showing that personal jurisdiction is proper." *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 295 (5th Cir. 2020). In evaluating whether the plaintiff has met that burden, courts "must accept the plaintiff's uncontroverted allegations, and resolve in [the plaintiff's] favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Id.* When considering a motion to dismiss for lack of personal jurisdiction, a district court is not limited to consulting only the plaintiff's complaint but may also consider "the contents of the record at the time of the motion." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020) (internal quotation marks omitted). But the Court need not "credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (citations omitted).

Personal jurisdiction exists when "the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Frank*, 947 F.3d at 336. "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

Due process has two elements: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it would reasonably anticipate being brought to court there, and (2) the exercise of jurisdiction over the defendant must "not offend traditional notions of fair play and substantial justice." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (internal quotation marks omitted) (citation omitted). "'Minimum contacts' can give rise to either general or specific jurisdiction." *Sangha*, 882 F.3d at 101. General jurisdiction permits a court to hear all claims against the nonresident defendant when its affiliations with the forum state are so "continuous and systematic" as to render it essentially at home in that state. *Id.* (internal quotation marks omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). By contrast, specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quoting *Goodyear*, 564 U.S. at 919).

"Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Id.* at 102. In determining whether the assertion of jurisdiction is fair, the court considers: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *E. Concrete Materials*, 948 F.3d at 298.

## III.

## ANALYSIS

The Court now addresses Food Lion's arguments for dismissal for lack of personal jurisdiction.

A.   *The Court lacks general jurisdiction over Food Lion because Food Lion's contacts with Texas do not make it essentially at home in Texas.*

A corporation is paradigmatically "at home" in two places: "(1) [its] state of incorporation and (2) the state where it has its principal place of business." *Frank*, 947 F.3d at 337 (citing *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017)). But "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). This "at home" analysis also applies to limited liability companies.[3]

Plaintiffs admit that "Food Lion is not a resident of the State of Texas." Doc. 50, Pls.' Resp. 2. Plaintiffs' Complaint does not contain allegations that Food Lion has any contacts with Texas. *See* Doc. 27, Pls.' Second Am. Compl. In their Response, Plaintiffs allege that Food Lion "has over fourteen stores" in Texas, which constitute "continuous and systematic" contacts with the state. Doc. 50, Pls.' Resp. 3. Food Lion denies that they have any stores in Texas and cite their website. *See All Food Lion Grocery Stores in United States*, Food Lion, https://stores.foodlion.com/ (last visited Sept. 26, 2022).

---

[3] *See Frank*, 947 F.3d at 337–38 n.10 ("[N]either the Supreme Court nor a sister circuit has directly addressed whether the type of artificial entity, e.g., partnership or limited liability company, affects the 'at home' analysis. [The Fifth C]ircuit and several in-circuit district courts have applied the 'at home' test to entities other than corporations, albeit without analyzing whether the entity type changes the outcome.").

The Court must resolve factual conflicts in the Plaintiffs' favor at this stage; however, the bare allegation that Food Lion operates stores in Texas does not constitute a prima facie case for general jurisdiction. The plaintiff bears the burden of making a *prima facie* showing that personal jurisdiction is proper. *E. Concrete Materials*, 948 F.3d at 295. For an LLC to be considered "at home" in a state, a plaintiff must go beyond simply identifying a physical presence in the state and show why the physical presence constitutes continuous and systematic contacts. *See Munro v. Lucy Activewar, Inc.*, 2016 WL 4257750, at *4 (W.D. Tex. Jan. 14, 2016) ("Accordingly, to establish general jurisdiction, Plaintiffs must make a prima facie showing that the retail stores VF Outdoor, Inc. maintains in Houston, Dallas, and San Antonio are sufficient to constitute continuous and systematic contacts making VF Outdoor, Inc. 'at home' in Texas."). "A defendant's physical presence in the state of Texas, without more, is not sufficient to establish general jurisdiction." *Id.* The Court finds that Plaintiffs have not carried their burden of showing that the Court may exercise general jurisdiction over Food Lion.

B.      *The Court lacks specific jurisdiction over any of Food Lion's claims.*

In the Fifth Circuit, "specific jurisdiction is a claim-specific inquiry." *McFadin*, 587 F.3d at 759. For each claim, the Court must ask

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 318–19 (5th Cir. 2020).

Plaintiffs present three claims: (1) negligent misrepresentation, (2) breach of contract, and (3) unjust enrichment. *See* Doc. 27, Pls.' Second Am. Compl. ¶ 2. Plaintiffs' Complaint does not

-6-

clarify which claims are directed at Food Lion; thus, Plaintiffs have not presented any claim-specific arguments. *See id.* ¶¶ 25–33. The Complaint does not assert that Food Lion committed negligent misrepresentation; rather, it indicates that the Plaintiffs only bring their unjust enrichment claim against Food Lion. *See id.* ¶ 32. But Plaintiffs' Response suggests that they may also have intended to bring their breach-of-contract claim against Food Lion. *See* Doc. 50, Pls.' Resp. 2–3. Accordingly, the Court considers minimum contacts for Plaintiffs' unjust enrichment claim and breach-of-contract claim.

1.     Unjust Enrichment

Plaintiffs have not made a *prima facie* showing that specific jurisdiction is proper regarding their unjust enrichment claim. Under Texas law, "[u]njust enrichment applies as a theory of recovery 'when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'" *Fairchild v. Barot*, 946 F. Supp. 2d 573, 579 (N.D. Tex. 2013) (quoting *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). Minimum contacts for specific jurisdiction over an unjust enrichment claim exist when the claim arises from acts that occur in the state. *Excentus Corp. v. Success Sys., Inc.*, 2019 WL 6346476, at *6 (N.D. Tex. Nov. 26, 2019). Here, Plaintiffs' claim arises from Food Lion's refusal of a produce shipment in South Carolina. Doc. 27, Pls.' Second Am. Compl. ¶¶ 16, 32. The Complaint does not allege that any of the facts giving rise to their claim occurred in Texas or that Food Lion has any other minimum contacts with Texas. *See id.* ¶¶ 14–24. Thus, the Court finds that Plaintiffs have not established that Food Lion has minimum contacts with Texas for their unjust enrichment claim.

2.    Breach of Contract

The Court likewise finds that Plaintiffs have not made a *prima facie* showing that specific jurisdiction is proper regarding their breach-of-contract claim. Minimum contacts for a breach-of-contract action exist when the allegedly breached contract had a substantial relationship to the forum state, considering the totality of the circumstances. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "When determining whether a court has personal jurisdiction over a breach of contract claim, only those acts which relate to the formation of the contract and the subsequent breach are relevant, including prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Danziger & De Llano v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 500 (5th Cir. 2022) (internal quotations ommitted).

Plaintiffs' Response argues that "Food Lion made purposeful contacts with Texas when it contracted with Holman . . . [and] trusted DNA Trucking to carry a load of produce to one of [its] stores." Doc. 50, Pls.' Resp. 2–3. It also states that "Food Lion purposely availed itself to Texas when it did business with a Texas based company." *Id.* at 3. These assertions both contradict Plaintiffs' Complaint—which states that Plaintiffs contracted with C.H. Robinson to deliver produce to Food Lion—and find no support in the record. *See* Doc. 27, Pls.' Second Am. Compl. ¶ 15. This contradiction between the response and complaint alone is sufficient for the Court to disregard Plaintiffs' assertion that Holman contracted with Food Lion under principles of judicial estoppel. *See Mesa Underwriters Speciality Ins. Co. v. ABCO Builders, Inc.*, 2018 WL 6737684, at *4 (N.D. Tex. Nov. 8, 2018) ("To the extent MMA's response contradicts its complaint, this contradiction alone

is enough for the undersigned to disregard Mesa's assertion that ABCO is a Texas resident under principles of judicial estoppel.").

Even if the Court credits Plaintiffs contradictory allegation that Food Lion did contract with Holman, "merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citations omitted). The Fifth Circuit has considered multiple factors when determining if a contact establishes minimum contacts: (1) which party solicited the contract; (2) the extent of negotiations; (3) the location of the communications; (4) the length of the contract performance contemplated; (5) the presence of a choice-of-forum clause or similar provision; (6) the place of performance; (7) the amount of control over performance in the forum state; and (8) whether the defendant contracted with the plaintiff because of the plaintiff's location within the forum state. *Ecigrusa LLC v. Silver State Trading LLC*, 2022 WL 1321573, at *4 (N.D. Tex. May 3, 2022) (Boyle, J.) (synthesizing factors and collecting cases). Of the eight factors, Plaintiffs address only the contract's place of performance. Holman's delivery contract—whether it was with C.H. Robinson or Food Lion—required the delivery of produce to stores in South Carolina. Doc. 27, Pls.' Second Am. Compl. ¶¶ 15–16. Based on the allegations in the record, the Court finds that, even if Food Lion contracted with Holman, that contract would not be sufficient to establish minimum contacts by Food Lion for Plaintiffs' breach-of-contract claim.

In conclusion, the Court finds that Food Lion has not established minimum contacts with Texas for either general jurisdiction or specific jurisdiction over Plaintiffs' unjust enrichment claim or breach-of-contract claim. Therefore, the Court need not conduct a fairness-factors analysis. *See Stuart*, 772 F.2d at 1191–92 ("[T]he fairness factors cannot of themselves invest the court with

jurisdiction over a nonresident when the minimum-contacts analysis weighs against the exercise of jurisdiction."). For all the foregoing reasons, the Court **GRANTS** Food Lion's motion to dismiss Plaintiffs' claims for lack of personal jurisdiction under Rule 12(b)(2).

## IV.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 41). The claims against Food Lion are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction under Rule 12(b)(2).

**SO ORDERED.**

**SIGNED: September 30, 2022**.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE